IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| SWISSMARINE PTE LTD | * | |
| Plaintiff, | * | Civil Action No. |
| v. | * | |
| M/V ANGLO MARIE LOUISE, IMO: 9490492, its engines, tackle and apparel | * * * | |
| Defendant *in rem*, | * | |
| And | * | |
| ANGLO MARIE LOUISE SHIPPING LIMITED, | * | |
| Defendant *quasi in rem*, | * | |
| And | * | |
| The Master of the M/V ANGLO MARIE LOUISE, | * * | |
| Garnishee. | * | |

\* \* \* \* \* \* \* \* \* \* \*

**VERIFIED COMPLAINT *IN PERSONAM* AND FOR ARREST AND ATTACHMENT OF VESSEL AND BUNKERS *IN REM* AND *QUASI IN REM***

SwissMarine Pte. Ltd. ("SwissMarine") sues the M/V ANGLO MARIE LOUISE, IMO: 9490492 (the "Vessel") *in rem*, pursuant to Supplemental Admiralty and Maritime Rule C, on SwissMarine's maritime lien against the Vessel, and sues Anglo Marie Louise Shipping Limited ("Anglo") *quasi in rem*, as owner of the Vessel, pursuant to Supplemental Admiralty and

Maritime Rule B, requesting the issue of a writ of maritime attachment to the Master of the Vessel as Garnishee, and states further as follows.

## Jurisdiction and Venue

1. This is an admiralty and maritime action pursuant to 28 U.S.C. § 1333 within the meaning of Fed. R. Civ. P. 9(h).

2. SwissMarine further brings this action pursuant to the Federal Arbitration Act, 9 U.S.C. § 8 to assist and to obtain security for SwissMarine's claims against Anglo in an ongoing London maritime arbitration action arising from Anglo's Time Charterparty breach.

3. Venue is proper in this Court because the Vessel is at or near the Kinder Morgan Terminal in Norfolk, Virginia, in this District.

4. Anglo is not found in this District for the purposes of Supplemental Admiralty and Maritime Rule B.

## The Parties

5. SwissMarine is a Singapore company which time chartered the Vessel pursuant to the terms of a Charterparty.

6. Anglo, a United Kingdom company, is the registered owner of the Vessel and further the owner of the Vessel under general United States maritime law, including the Maritime Transportation Security Act of 2002, 33 U.S.C. § 2701(26)(A)(i) ("Owner").

7. The Vessel, M/V ANGLO MARIE LOUISE, is a 255.26m bulk carrier, sailing under the flag of the United Kingdom and involved in the international shipment of coal.

## Facts

8. On or about January 9, 2024, SwissMarine entered into a time charter agreement (the "Time Charter Party") for the Vessel with Anglo. The Time Charter Party provided for resolution of disputes by London maritime arbitration. SwissMarine, on or about October 15, 2024, entered an agreement ("Vessel Charter Party") with sub-charterer of the Vessel, non-party PSL Shipping Ltd. ("PSL"), for the voyage charter and transport aboard the Vessel of bulk coal ("Cargo") from Baltimore, Maryland to China.

9. On or about November 23, 2024, the Vessel completed loading the Cargo and departed Baltimore. An explosion occurred in the cargo holds while the Vessel was underway on or about November 27, 2024 (herein "Explosion").

10. Per the parties' agreement, Anglo was obliged to handle, keep and care for the loaded coal with the care and skill expected of a prudent carrier. Anglo was further obliged to comply with the ISM Code and/or ensure that the Vessel complied with the ISM Code throughout the duration of the Time Charter and indemnify SwissMarine against all loss, damage, expense and delay caused by a failure to do so.

11. In addition, Anglo was also obligated to exercise due diligence to ensure that the Vessel was seaworthy and/or cargo worthy at the commencement of the voyage.

12. Anglo's failure to comply with the ISM Code and/or ensure that the Vessel complied with the ISM Code, and the handle the Cargo with care and skill, caused the Explosion. In the alternative – or in addition to its above failure, Anglo's failure to exercise due diligence to ensure that the Vessel was seaworthy and/or cargo worthy at the commencement of the voyage caused the Explosion.

13. In further breach of its obligations, Anglo failed to perform SwissMarine's orders (as charterer) with reasonable dispatch and failed repair the Vessel with reasonable diligence.

14. On or about June 2025, in Norfolk, Virginia, PSL transloaded the Cargo from the Vessel to the M/V BELLEVUE- a vessel also chartered by SwissMarine – for transport to foreign ports.

15. Because the Cargo has not yet been delivered, damages continue to accrue, and it is necessary for the parties to estimate their damages.

16. As a result of the Explosion, PML allegedly suffered damages. PML seeks an award against SwissMarine for its damages in the London arbitration. SwissMarine understands PML alleges damages in the amount of approximately USD 24M ($24,000,000) as further detailed below:

    a. Transhipment and related costs: approximately **USD 8 million ($8,000,000).**
        i. Use of the Kinder Morgan Terminal = USD 4.5 to 5.5 million (USD 4.26 million incurred plus fees that continue to accrue in the amount of about USD 70,000 per day);
        ii. Daily fee paid to Head Owners from 10 May 2025 under the Transhipment Agreement;
        iii. Demurrage paid to SwissMarine under Addendum No.1 to the Voyage Charterparty dated 15 October 2024 = USD 2 million; and
        iv. Miscellaneous expenses (e.g. sampling and monitoring costs, agency fees etc)

    b. Contingency for indemnity for possible cargo claims: **USD 10.5 million ($10,500,000)**

While no claims have been brought against PSL yet, PSL believes there is a reasonable possibility that the coal will have lost its coking properties due to the prolonged stay onboard the Vessel. It is estimate that the diminution in value of the coal is about USD $100 USD/ per MT if it has lost its coking properties.

    c. Legal and expert fees through to the issue of an award: approximately **USD 3.35 million ($ 3,350,000)**

    d. Interest at 7.5% as per current LMAA USD interest rates: approximately **USD 2 million ($2,000,000).**

Interest is calculated at the rate of 7.5% as per current LMAA USD interest rates on the transshipment costs, the cargo claims and the legal costs for a period of 2 years.

17. SwissMarine seeks damages and/or indemnity from Anglo in the London arbitration, including, but not limited to: (1) damages and/or an indemnity in respect of any sum that is awarded to PSL (including any costs that SwissMarine is ordered to pay); (2) any sum paid in reasonable settlement of the claims made by PSL; and (3) any costs reasonably incurred in defending the claims made by PSL in the London arbitration.

18. SwissMarine also incurred direct losses because of Anglo's Time Charterparty breaches which it seeks in the London arbitration in an estimated amount of **USD 8,000,000,** as follows:

    a. Costs incurred in responding to the Explosion, including costs of experts, surveys, and gas level testing: approximately **USD 3 million ($3,000,000).**

    b. Costs and losses that SwissMarine has incurred in transhipping the Coal from the Vessel to the BELLEVUE and the costs they will incur in carrying the Coal to Indonesia using the BELLEVUE: approximately **USD 5 million ($5,000,000).**

19. SwissMarine's damages, and accordingly maritime lien *in rem* against the Vessel, amounts to at least **USD 32 million ($32,000,000).**

## COUNT I – MARITIME CONTRACT BREACH
## *IN PERSONAM* AGAINST ANGLO – ARBITRATION

20. SwissMarine repeats the foregoing paragraphs.

21. Through the Charterparty Anglo owed duties to SwissMarine including, complying with the ISM Code and/or ensuring that the Vessel complied with the ISM Code, keeping and caring for the loaded Cargo with the care and skill expected of a prudent carrier, and exercising due diligence to ensure that the Vessel was seaworthy and/or cargo worthy at the

commencement of the voyage, and ultimately to deliver the Cargo to its destination in good order and condition.

22. Anglo breached its contractual obligations to SwissMarine and therefore owes SwissMarine damages as demanded below, to be awarded in London maritime arbitration.

## COUNT II – MARITIME LIEN *IN REM* AGAINST THE VESSEL

23. SwissMarine repeats the foregoing paragraphs.

24. SwissMarine as the result of the failures set out in Count I, holds a maritime lien *in rem* against the Vessel for its damages, the costs of arrest, and interest, as set out below

25. SwissMarine has not been paid or otherwise secured for its maritime lien *in rem* against the Vessel and therefore proceeds to arrest the Vessel to execute on its maritime lien *in rem*, for sale of the Vessel and satisfaction of its maritime lien *in rem* as demanded below.

## COUNT III MARITIME ATTACHMENT AND GARNISHMENT (RULE B)

26. SwissMarine repeats the foregoing paragraphs.

27. SwissMarine has *prima facie* valid admiralty claims.

28. Defendant Anglo cannot be located within the District within the meaning of Supplemental Rule B.

29. Defendant Anglo owns property located or soon to be located within this District, namely, the Vessel and the Bunkers (marine fuel) aboard the Vessel, which Garnishee Master of the Vessel holds and/or controls.

30. SwissMarine seeks issue of process of maritime attachment and garnishment so that it may obtain security for its claims as set out in Counts I or II herein, against Anglo and, ultimately, payment of those claims from such security.

31. No security for SwissMarine's claims has been posted by Anglo or anyone acting on its behalf.

**PRAYER FOR RELIEF**

WHEREFORE, SwissMarine demands judgment as follows:

A. That, in response to Count I (maritime contract breach in personam against Anglo),

    1. This Court after SwissMarine obtains security in at least the amount of **$32,000,000.00 USD** as detailed above, plus costs and expenses of this action including arrest and maritime prejudgment interest, the costs of arbitration, including arbitrators' and attorneys' fees) stay this action pending the results of the arbitration and then recognize the arbitral award or any judgement thereon, directing that whichever applicable be satisfied to the amount of the award or judgement with any unsatisfied amounts being subject to the further unsatisfied amount of this Court's judgment recognizing the arbitral award or judgement to the full amount of the award and/or any related judgement; or, in the alternative

B. That, in response to **Count II** (*in rem*, maritime lien against the Vessel):

    1. That the Clerk of this Court issue a warrant for arrest of the Vessel, commanding the United States Marshal for this District, or pursuant to alternative service of the warrant as ordered by this Court, to arrest and take into custody the Defendant Vessel and detain the same in the custody of the substitute custodian until further order of this Court;

    2. That this Court find that Plaintiff holds a valid maritime lien *in rem* against the Vessel and its engines, appurtenances, furnishings, machinery, and equipment;

    3. That this Court enter judgment *in rem* against the Vessel, including without limitations all of its engines, machinery, tools, boats, anchors, chains, tackle, fittings, navigation equipment, and all other equipment and appurtenances appertaining or belonging to the Vessel, whether on board or not, and order that Plaintiff's claims of at least **$32,000,000.00 USD** as detailed above, plus costs and expenses of this action including arrest and maritime prejudgment interest, the costs of arbitration, including arbitrators' and attorneys' fees be asserted and executed against the Vessel for Plaintiff's maritime liens, *in rem*, and that the Vessel be sold to satisfy Plaintiff's maritime liens *in rem*;

    4. That all persons claiming any interest in the Vessel be cited to appear and answer the matters alleged in this Verified Complaint; and that this Court award Plaintiff its costs and other expenses incurred in connection with this proceeding, including without limitations, all costs incurred in *custodia legis*; and

C. That, in response to **Count III** (maritime garnishment, Supplemental Rule B), because Defendant Anglo cannot be found within this District, pursuant to Rule B, this Court issue an Order directing the Clerk of Court to issue a Process of Maritime Attachment and Garnishment attaching all of Anglo's tangible or intangible property or any other funds held by any Garnishee, including the Vessel and Bunkers, up to the amount of at least **$32,000,000.00 USD** as detailed above, to secure Plaintiff's claims;

D. That upon provision of full security in response to the respective arrest and attachment as demand for Counts II and III above, or if no provision of security, sale of the Vessel and Bunkers and deposit of the sale proceeds in the Registry of this Court, that this case be stayed pending the outcome of arbitration; and

E. That this Court grant Plaintiff other just and proper legal and equitable relief.

Dated: June 23, 2025.

/s/ S.M. Griffin, Jr.
Steven Marshall Griffin, Jr.
VA Bar Number: 87585
THE GRIFFIN LAW FIRM
999 Waterside Drive
Suite 2525
Norfolk, VA 23510
757-434-0198
Email: marshall@griffinlawdefense.com

/s/ J. Stephen Simms
J. Stephen Simms, *pro hac vice pending*
Gary C. Murphy, *pro hac vice pending*
Simms Showers LLP
201 International Circle, Suite 230
Baltimore, Maryland 21030
Telephone: 410-783-5795
Fax: 410-510-1789
jssimms@simmsshowers.com
gcmurphy@simmsshowers.com

SwissMarine Pte. Ltd. Counsel

## VERIFICATION

I am a principal of Simms Showers LLP, counsel to Plaintiff SwissMarine Pte. Ltd. ("Swiss Marine"). No officer of SwissMarine is present in this District to make this declaration, which SwissMarine has authorized me to make on their behalf based on facts including documents and facts from SwissMarine' investigation. The facts alleged in the foregoing complaint are true and correct to the best of my knowledge and information based upon the documents and records available to SwissMarine.

I further certify that, pursuant to Supplemental Rule B, I caused a search to be made of electronic records and Directory Assistance for addresses and telephone numbers in this District and also for any corporate registration of Defendant Anglo Marie Louise Shipping Limited ("Anglo") in the State of Virginia or otherwise of any agent authorized to accept service of process in this District. There is no record of any general or resident agent authorized to accept service of process for Defendant Anglo in this District.

Pursuant to 28 U.S.C. § 1746(1), I certify under penalty of perjury that the foregoing is true and correct.

Executed June 23, 2025.

/s/ J. Stephen Simms
J. Stephen Simms
Simms Showers LLP
201 International Circle
Baltimore, Maryland 21030
443-290-8704; fax 410-510-1789
jssimms@simmsshowers.com